*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1558**

State of Minnesota,
Respondent,

vs.

Micheal Lee Cocuzzi,
Appellant.

**Filed December 4, 2023**
**Affirmed**
**Ross, Judge**

Dodge County District Court
File No. 20-CR-21-284

Keith Ellison, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota; and

Paul Kiltinen, Dodge County Attorney, Mantorville, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Ross, Judge; and Halbrooks,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**ROSS**, Judge

After the mother of a ten-year-old girl asked the girl why she had searched for "adult sex with a child" on the internet, the girl reported that her father, Micheal Cocuzzi, had repeatedly sexually assaulted her. The state charged Cocuzzi with second-degree criminal sexual conduct. Cocuzzi's older daughter testified at Cocuzzi's trial that he had previously similarly abused her. The jury asked the district court during deliberations about two of the elements of second-degree criminal sexual conduct, and the court referred the jury back to its written instructions. Cocuzzi argues on appeal from his conviction that the district court should have excluded his older daughter's testimony and answered the jury's question. Because the district court admitted the challenged testimony on two bases and Cocuzzi challenges only one of them on appeal, we hold that the district court acted within its discretion by admitting the testimony. We also hold that any error in the district court's failure to directly answer the jury's question was not plain. We therefore affirm Cocuzzi's conviction.

## FACTS

A mother found evidence of a search for "adult sex with a child" on a laptop computer belonging to her ten-year-old daughter. We will call the daughter Shelly in the interest of her privacy. Micheal Cocuzzi is Shelly's father. When the mother asked Shelly about the search, Shelly wrote a note explaining, "Dad he do[es] it to me and I wanted to see what he c[o]uld do to me and he do[es] it every year and that's why I want to stay and live near [where] I know [I'm] safe." Shelly told her mother how Cocuzzi had been sexually

2

abusing her for years, beginning in June 2016 and occurring as recently as December 2020. The mother reported the abuse to police.

A forensic investigator interviewed Shelly about the abuse. Shelly told the interviewer that Cocuzzi and her mother were divorced and lived in different states. Shelly said that she stayed with Cocuzzi in a hotel room in December 2020, when Cocuzzi sexually assaulted her twice in the same evening. The first involved Cocuzzi rubbing her vaginal area with his hand both over and under her clothing. The second involved him rubbing her vaginal area unclothed, with his penis. The state charged Cocuzzi with three counts of second-degree criminal sexual conduct. The state premised one of the counts on Cocuzzi's having sexually assaulted Shelly over an extended period.

The state gave notice before trial that it intended to introduce testimony from Cocuzzi's older daughter, whom we will call Mary, as *Spreigl* evidence. Cocuzzi opposed the admission of the testimony as *Spreigl* evidence. The state questioned Mary at trial during an unsworn offer of proof. Mary recounted that Cocuzzi sexually abused her when she was six years old. She had reported the abuse to her mother, counselors, and police. The district court allowed Mary to testify before the jury, admitting her testimony as relationship evidence and later stating that it admitted the testimony both as relationship evidence and as *Spreigl* evidence. The district court cautioned the jury not to find Cocuzzi guilty based on his conduct against Mary but to use the evidence only as it bore on Cocuzzi's relationship with Shelly. Cocuzzi did not object to the district court's admission of the evidence on relationship grounds. After the close of testimony and arguments, the

district court instructed the jury not to use Mary's testimony as proof of Cocuzzi's character.

The jury began deliberating. Within minutes it wrote a two-part question, asking the district court a question about the multiple-acts element of one of the criminal-sexual-conduct charges and about the temporal element of one of the charges: "On count 3 the 5th part are the touching with the hand and touching with the penis considered multiple acts? Is an extended period of time considered occurring on the same day or different days?" The district court replied, "You must rely on the evidence as presented and the jury instructions." Neither party objected or argued for a different answer before or after the district court responded to the questions.

The jury found Cocuzzi guilty on all three counts of second-degree criminal sexual conduct, and the district court convicted him of criminal sexual conduct involving multiple acts committed over an extended period. It sentenced him to serve 108 months in prison. Cocuzzi appeals.

## DECISION

Cocuzzi raises two challenges to his conviction. He argues first that the district court wrongfully admitted Mary's testimony as *Spreigl* evidence, maintaining both that the state did not provide clear and convincing evidence that he abused Mary and that the evidence's potential for unfair prejudice outweighed its probative value. He argues second that the district court should have defined the term "extended period of time" by declaring that extended means more than a span of minutes. Neither argument leads us to reverse.

4

# I

Cocuzzi argues that the district court improperly admitted Mary's testimony of prior sexual abuse as *Spreigl* evidence. We will address Cocuzzi's *Spreigl* argument, but we emphasize that our *Spreigl* analysis is wholly unnecessary to our decision. The analysis is unnecessary because the district court expressly admitted the challenged testimony on two evidentiary bases—as *Spreigl* evidence under Minnesota Rule of Criminal Procedure 7.02 and as relationship evidence of domestic conduct under Minnesota Statutes section 634.20 (2022)—but Cocuzzi now challenges the admission only on the *Spreigl* basis. He fails to argue that the testimony was inadmissible as relationship evidence. At most, he suggests in a footnote that the district court must not have *really* intended to admit the testimony as relationship evidence (despite the fact that the district court plainly stated that it was doing just that). He so suggests because the state had not asked the district court to admit the testimony as relationship evidence and, he proffers, the judge would have been acting as an advocate and violating the Code of Judicial Conduct by admitting the evidence on a theory not raised by the state. The suggestions fail for lack of development.

Because Cocuzzi never develops his footnoted conjecture, we will not consider it. We may deem allegations unsupported by argument or authority to be waived. *State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002). Cocuzzi has not asserted or offered any authority indicating that we must ignore the district court's stated ground for admitting the evidence, and we decline to craft his implicit argument for him. The record informs us that the district court admitted the testimony expressly on two grounds, including relationship evidence, and Cocuzzi never objected to the district court's decision to admit the testimony

5

on that ground. And he has not argued on appeal that the testimony was inadmissible on that ground. Cocuzzi's decision not to challenge on appeal the district court's decision to admit the testimony as relationship evidence renders inconsequential his contention that it is inadmissible as *Spreigl* evidence.

Although it is unnecessary to our decision, we add that we also are unpersuaded by Cocuzzi's *Spreigl* argument on the merits. We review the district court's admission of prior bad acts evidence, also called *Spreigl* evidence, for an abuse of discretion. *State v. Griffin*, 887 N.W.2d 257, 261–62 (Minn. 2016); *see also State v. Spreigl*, 139 N.W.2d 167 (Minn. 1965). We are satisfied that the district court acted within its discretion by admitting the evidence.

Cocuzzi maintains that the district court abused its discretion by admitting Mary's testimony that Cocuzzi had previously sexually abused her. A district court acts within its discretion to admit this sort of bad-acts evidence if five requirements are met:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Angus v. State*, 695 N.W.2d 109, 119 (Minn. 2005) (quotation omitted). Cocuzzi contends that the state did not meet two of those five, arguing that the state failed to provide clear and convincing evidence that he sexually abused Mary and that the potential for unfair prejudice outweighed the evidence's probative value. Neither argument is convincing.

6

We reject Cocuzzi's contention that the state failed to provide clear and convincing evidence that he molested Mary. Evidence is clear and convincing if there is a high probability that the facts asserted are true. *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998). Mary had previously disclosed the abuse to her mother, her counselor, and police, and the district court implicitly found Mary's allegations to be credible. We defer to the district court's findings on credibility. *State v. Heath*, 685 N.W.2d 48, 59 (Minn. App. 2004), *rev. denied* (Minn. Nov. 16, 2004). Although Mary's different accounts varied somewhat, the variations are not so extraordinary that we would supplant the district court's credibility finding. The evidence of Cocuzzi's prior conduct was clear and convincing.

We also reject Cocuzzi's contention that the potential unfair prejudice from Mary's testimony outweighed its probative value. *Spreigl* evidence is admissible to respond to a defense of mistake or fabrication if the *Spreigl* evidence depicts conduct that is similar to the trial allegations, suggesting a common scheme or plan. *State v. Ness*, 707 N.W.2d 676, 688 (Minn. 2006). The district court admitted the testimony in that context, reasoning, "I do think that it is very probative in light of what I understand to be your client's position, which is that this did not happen." The state accurately highlights the similarities in Shelly's and Mary's allegations of abuse. Both are Cocuzzi's biological daughters. Both were prepubescent children when Cocuzzi allegedly sexually assaulted them. Both alleged assaults occurred during Cocuzzi's parenting time. And both involved similar sexual touching without penetration. The *Spreigl* evidence was probative to show a common scheme, undercutting Cocuzzi's defense that Mary had fabricated her account.

7

Cocuzzi maintains that Mary's testimony was prejudicial in that it portrayed him as a sexual predator. But he does not point to any testimony or statements by the prosecutor that so characterized Mary's account. He speculates that the district court's cautionary instruction compounded the prejudice. To the contrary, we assume that juries follow district court instructions, *State v. Matthews*, 779 N.W.2d 543, 550 (Minn. 2010), and we therefore will not assume that the district court's repeated cautioning against using the testimony as character evidence against Cocuzzi aggravated any danger that the jury would apply the evidence unfairly. Although the evidence was prejudicial, Cocuzzi points to nothing in the record that supports his view that it was unfairly prejudicial. We cannot conclude that its potential for unfair prejudice outweighed its probative value. We therefore hold that the district court did not abuse its discretion by admitting the testimony.

**II**

Cocuzzi argues that the district court inappropriately failed to answer the jury's question during deliberations. The district court may, among other options in its exercise of discretion, respond to a jury's request for additional instructions during deliberation by providing additional instructions or by repeating portions of its original instructions. Minn. R. Crim. P. 26.03, subd. 20(3); *State v. Murphy*, 380 N.W.2d 766, 772 (Minn. 1986) ("The court has the discretion to decide whether to amplify previous instructions, reread previous instructions, or give no response at all."). We review unobjected-to jury instructions only for plain error. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Because Cocuzzi did not offer the district court any different answer or object to the answer the district court gave, we will review only for plain error.

Cocuzzi's jury-instruction challenge does not survive our plain-error review. Under that review, we would reverse only if we identified an error, determined that the error was plain, and concluded that the error affected Cocuzzi's substantial rights. *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). An error is "plain" when it is "clear or obvious." *Id.* at 807. Put differently, an error is plain when the error clearly or obviously contradicts the law. *State v. Webster*, 894 N.W.2d 782, 787 (Minn. 2017). And an error affects substantial rights only if it was prejudicial, affecting the outcome of the case. *Griller*, 583 N.W.2d at 741. If Cocuzzi can establish that a plain error affecting his substantial rights occurred, we may correct the error only if it also seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 740. For the following reasons, we conclude that even if the district court's failure to instruct the jury differently constituted an error, the error was not plain.

We must decide whether failing to elaborate on the meaning of "extended period of time" in the context of Cocuzzi's charge of second-degree criminal sexual conduct was plain error. A person is guilty of second-degree criminal sexual conduct when he engages in sexual contact against a complainant with whom he has a significant relationship if the complainant is younger than sixteen and the abuse involved multiple acts "over an extended period of time." Minn. Stat. § 609.343, subd. 1(h)(iii) (2020). The supreme court has characterized it as "well settled that the [district] court's instructions must define the crime charged and . . . explain the elements of the offense." *State v. Ihle*, 640 N.W.2d 910, 916 (Minn. 2002). We generally agree with Cocuzzi that the district court should attempt to answer a jury's question about the meaning of an element of a criminal offense when the

9

jury expresses uncertainty about it. But Cocuzzi's extensive argument in search of a definition here informs us that the district court did not *plainly* err by not answering the question more substantively.

Cocuzzi's argument demonstrates that the district court's alleged error in failing to define the phrase was not plain. As Cocuzzi acknowledges, "'Extended period of time' is not defined by statute, nor have Minnesota's appellate courts interpreted the phrase." Whether the phrase must refer to a period that covers more than a lengthy span of hours is an issue that Cocuzzi attempts to answer only by inference, citing or referencing more than seven cases and a dictionary discussing uses of the word "extended" in various contexts, none excluding the possibility that an extended period can include a span of hours. Cocuzzi may be correct that "extended period of time" refers to a longer period. But the district court's failure to answer the jury's question by stating that this is so did not clearly or obviously contradict the law. In the absence of any statute or caselaw expressly establishing that "extended" cannot include an extended period within a day, we cannot say that the district court plainly erred by not declaring so to the jury. We therefore need not address whether the alleged error impacted Cocuzzi's substantial rights or whether, if it did, correcting the error in this case is required to protect the fairness, integrity, or public reputation of the judiciary.

**Affirmed.**